IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION


WILLIE RAY PORCHIA, SR.                                                PLAINTIFF


              v.                        Civil No. 1:13-cv-01038


SHERIFF DAVID NORWWOD;
LT. JOE STRICKLAND; JAMES BOLTON;
DOUG WOODS; CARMEN BRIAN;
TERI WEST; CHRIS LINDSEY; and
ADRIAN MCFARLAND                                                       DEFENDANTS


## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This is a civil rights action filed *pro se* by the Plaintiff, Willie Porchia, pursuant to 42 U.S.C. § 1983. Plaintiff is currently incarcerated at the Arkansas Department of Correction East Arkansas Regional Unit ("ADC").

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court is Defendants' Norwood, Strickland, Bolton, Woods, Brian, West, and Lindsey's Motion for Summary Judgment.[1] ECF No. 24. I held a hearing on September 15, 2015, at which time, I heard Plaintiff's sworn testimony in response to the Motion for Summary Judgment. After careful consideration, I enter the following

---

[1] Defendant Adrian McFarland has not moved for summary judgment, however, I am able to dispense with Plaintiff's claims against Defendant McFarland herein as explained in detail below.

Report and Recommendation.

## 1.      BACKGROUND

Plaintiff filed his Amended Complaint on February 26, 2015.  ECF No. 21.  The claims Plaintiff alleges in his Amended Complaint concern his medical care while incarcerated in the Ouachita County Detention Center ("OCDC").  In his Amended Complaint, Plaintiff names Sheriff David Norwood, Lt. Joe Strickland, James Bolton, Doug Woods, Carmen Brian, Teri West, Chris Lindsey, and 309 Inmate[2] Adrian McFarland as Defendants.  ECF No. 21, p. 1.  Plaintiff alleges both official and individual capacity claims against all Defendants.

In his Amended Complaint, Plaintiff claims Defendants violated his constitutional rights by denying him medical care and medications.  Specifically, Plaintiff claims he suffered a sever burn on his back before being booked into the OCDC.  Plaintiff was booked into the OCDC on May 3, 2012 and was denied medical care for this burn until June 5, 2012.  Plaintiff also claims he was denied medication for approximately ten (10) to fifteen (15) days in April 2013.  Finally, Plaintiff claims that Defendants violated his constitutional rights by allowing a 309 inmate, Defendant McFarland, to book Plaintiff into the OCDC.  ECF No. 21.

Defendants' Norwood, Strickland, Bolton, Woods, Brian, West, and Lindsey ("Ouachita Defendants") filed a Motion for Summary Judgment on June 2, 2015.  ECF No. 24.  In this Motion, the Ouachita Defendants argue (1) Plaintiff failed to state any official capacity claim; (2) Plaintiff failed to show Defendants Norwood and Strickland had any personal involvement in or responsibility for the actions complained of; (3) Plaintiff's allegations are not denial of medical

---

[2] A 309 inmate is an inmate from the Arkansas Department of Corrections being housed at a county jail under the Act 309 Program.

care claims but instead delay of medical care claims; and (4) no Defendant was deliberately indifferent to Plaintiff's medical needs.

The Court held a hearing on this Motion on September 15, 2015.  At this hearing, Plaintiff provided sworn testimony as his response to the Ouachita Defendants' Motion.  Plaintiff also subsequently submitted to the Court eleven exhibits (Exhibits A - K) in support of his testimony. ECF No. 33.

## 2.    SUMMARY JUDGMENT RECORD

In their Motion for Summary Judgment, Ouachita Defendants assert the following as undisputed facts.  Plaintiff was booked into the OCDC on May 3, 2012.  ECF No. 26-3, p. 1. Plaintiff was provided with medical request forms.  Plaintiff filed a medical request on May 4, 2012 stating he suffered a burn approximately three to four weeks prior to his arrest.  ECF No. 26-3, p. 8.  Defendant Woods responded to this request on May 14, 2012 noting "[T]ake to ER.  Pre-existing condition Bill Inmate[.]  [I]nmate declined treatment for pre-existing condition on 5-18-12."  ECF No. 26-3, p. 8.  On May 15, 2012, Plaintiff filed another medical request noting he had a rash and a serious burn that did not need to be infected by the rash.  The response on this request notes: "Have rash checked out at local ER on 5-21-12."  ECF No. 26-3, p. 10.  Plaintiff had not sought medical attention for the burn prior to incarceration.  ECF No. 26-1, p. 37.  Plaintiff was taken to the emergency room on June 5, 2012 for the burn and rash.  Plaintiff was seen by a doctor at the emergency room and given Benadryl and intravenous fluids but not prescribed any medication.  ECF No. 26-3, pp. 12-19.  Plaintiff was taken to an appointment with Dr. DeLuca on June 28, 2012 for his burn and rash.  At this visit Plaintiff was prescribed medication for both the burn and rash.  ECF No. 26-3, pp.  Plaintiff again visited Dr. DeLuca on October 28, 2012 and

3

received additional prescriptions.  ECF No. 26-3, pp. 45-48.  Plaintiff also visited Dr. DeLuca on April 30, 2013.  ECF No. 26-3, pp. 60-65.  Plaintiff testified at his deposition that when Defendant Norwood was made aware of Plaintiff's complaints he would do something about them.  ECF No. 26-1, pp. 71-72.  Plaintiff also testified at his deposition that Carmen Brian was not involved in Plaintiff's claims regarding his medical care.  ECF No. 26-1, p. 74.

At the summary judgment hearing, I asked Plaintiff to provide a sworn statement detailing how he believes his constitutional rights were violated in response to the Ouachita Defendants' Motion for Summary Judgment.  Below is a summary of his sworn testimony:

Plaintiff testified he was booked into the OCDC on May 3, 2012.  Defendant McFarland booked Plaintiff into the OCDC and at book-in Plaintiff told Defendant McFarland about his burn. Plaintiff also showed Defendant Brian his burn at book-in and Defendant Brian told Plaintiff he would get Plaintiff medical attention after the book-in process was completed.  Instead, Plaintiff was taken to his pod without receiving any medical care.

The following day Plaintiff submitted a sick-call request.  Plaintiff was then moved to a different pod.  In this new pod, Plaintiff showed his burn to Defendant West.  According to Plaintiff, Defendant West told Plaintiff to submit a sick-call request and she gave Plaintiff two packs of cream for his burn.

The following day Defendant Lindsey responded to Plaintiff's request stating he would be taken to the hospital, however, Plaintiff was not taken to the hospital.  Plaintiff testified that Defendant Lindsey's supervisor (whom Plaintiff did not name) told Plaintiff he would have to sign something taking responsibility for payment of the hospital visit before the OCDC would transport him to the hospital.  Plaintiff referred to Plaintiff's Exhibits K-1 and K-3 in support of this

4

statement.  Exhibit K-1 is Plaintiff's May 4, 2012 Medical Request Form.  On this form Plaintiff requested treatment of his burn.  Defendant Wood responded on May 14, 2012 noting: "Take to ER.  Pre-Existing Condition Bill inmate[.]  [I]nmate declined treatment for pre-existing condition on 5-18-12."  ECF No. 33, p. 71.  Exhibit K-3 is Plaintiff's May 15, 2012 Medical Request Form. On this form, Plaintiff requests medical attention for a rash that is spreading quickly on his body. Plaintiff also states he does not want the rash to infect his burn.  Defendant Lindsey responded on May 21, 2012 noting "Have rash checked out at local ER on 5-21-12."  ECF No. 33, p. 73.

Plaintiff testified he was taken to the emergency room on June 5, 2012 but only after he signed a paper stating he would pay for the medical care.  At the emergency room, Plaintiff was only given Benadryl and instructed to see a regular doctor within one or two days.  Plaintiff cites to Plaintiff's Exhibit K-6 in support of this statement.  Exhibit K-6 is the Ouachita County Medical Center discharge instructions Plaintiff received on June 5, 2012.  On these instructions it notes Plaintiff was diagnosed with hypertension, prescribed no medication, and instructed to follow up with a private physician in one to two days.  ECF No. 33, p. 76.

Plaintiff testified he was not taken to the doctor again until June 28, 2012.  At the June 28, 2012 visit, Plaintiff was diagnosed with scabies, high blood pressure, and a burn.  Plaintiff cited to Plaintiff's Exhibit K-10 in support of this statement.  Exhibit K-10 is Plaintiff's Patient Plan from Ouachita Valley Family Clinic.  The plan notes Plaintiff was diagnosed with scabies, a burn, and hypertension.  Plaintiff was prescribed a one-time dose of cream to apply from head to toe, Zyrtec to take daily, Aleve to take as needed, Gabapentin to take three times daily, and Zestoretic to take daily.  ECF No. 33, p. 80.

Plaintiff also testified he notified Defendant McFarland at book-in that he suffered from

high blood pressure.  Plaintiff cited Exhibit I as support for this statement.  Exhibit I is Plaintiff's book-in documents.  On the documents it notes Plaintiff indicated he did not suffer from high blood pressure.  ECF No. 33, p. 48.

Further, Plaintiff testified he did not seek treatment for his burn prior to being arrested because he was hiding from authorities.  Plaintiff also testified that the delay in his treatment may have caused his scaring to be worse than it would have been had Defendants secured Plaintiff treatment sooner.  Additionally, Plaintiff testified his nerve damage may not be as severe if he had received treatment of his burn sooner.  Plaintiff testified he has never been told by a medical professional that his scar or nerve pain is worse due to a delay in treatment.  I then specifically asked Plaintiff if he had any verifying medical evidence showing his injury is worse than it would have been without any delay in treatment.  In response, Plaintiff testified he suffered pain and nerve damages from Defendants' actions and he assumed the delay caused his nerve damage.

Plaintiff also testified Defendant Norwood and Defendant Strickland are responsible for denying him medical care because they should have known about the situation.  According to Plaintiff, Defendant Strickland meets with the jail administrator and jailers weekly to discuss grievances.  Therefore, Defendant Strickland should have learned of Plaintiff's requests at these meetings.  Plaintiff also testified that Defendants Brian and West were the officers on duty when Plaintiff was booked into the OCDC.

Regarding the policy and procedures at the OCDC, Plaintiff testified it was the OCDC's responsibility to take care of him.  Plaintiff testified he did not know what the policy at the OCDC was but he assumes it is to help inmates.  Plaintiff also testified it was the policy of the OCDC to ask inmates to pay for care of pre-existing medical conditions.

6

Regarding the delay in medication in 2013, Plaintiff testified he went to the doctor on April 30, 2013 and the doctor prescribed Plaintiff pain medication at that visit. Plaintiff, however, was unable to get this medication for fifteen (15) days after this visit. Plaintiff wrote a grievance to Defendant Norwood on May 9, 2013 complaining of not receiving his medication. Defendant Lindsey responded on May 10, 2013 noting ". . . have looked into this matter and resolved the situation. Your medication will arrive shortly . . ." ECF No. 33, p. 127. Plaintiff testified he believes this delay in receiving his pain medication caused him dizziness, exhaustion and pain.

3.      **LEGAL STANDARD**

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on

7

a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**4.    DISCUSSION**

    A.    <u>Defendant McFarland</u>

I must fist address the matter of Defendant McFarland.  Defendant McFarland was a 309 inmate that was housed at the OCDC during the time in issue here.  Defendant McFarland booked Plaintiff into the OCDC.  Plaintiff claims in his Amended Complaint he disclosed to Defendant McFarland his burn and his high blood pressure but Defendant McFarland did not properly record this information.  Further, Plaintiff claims allowing Defendant McFarland, as a 309 inmate, access to Plaintiff's private information violated Plaintiff's right to privacy.

Defendant McFarland did not move for summary judgment along with the Ouachita Defendants because Defendant McFarland was only added in Plaintiff's Amended Complaint and has never been served in this matter.  As I have not yet done so, I now take this opportunity to review Plaintiff's claims against Defendant McFarland under the screening provisions of the Prison Litigation Reform Act ("PLRA").

    i.    Denial of medical care against McFarland

Pursuant to the PLRA, the Court shall review complaints in civil actions in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).  According to the screening provision in the PLRA, the Court must determine whether the causes of action stated in Plaintiff's Amended Complaint (1) are frivolous or malicious, (2) fail to state claims upon which relief may be granted, or (3) seek monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915(A). A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams,*

490 U.S. 319, 325 (1989).

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *See West v. Atkins,* 487 U.S. 42 (1988); *Dunham v. Wadley,* 195 F .3d 1007, 1009 (8th Cir.1999).

Here, Plaintiff has failed to allege that Defendant McFarland was a state actor.  According to Plaintiff, Defendant McFarland was an inmate of the ADC serving in the Act 309 Program at OCDC.  This is the only allegation Plaintiff makes as to Defendant McFarland's position at the OCDC.

Through the Act 309 Program the ADC contracts with county jails throughout the state for housing and supervision of ADC inmates.  The ADC's stated purpose of the Act 309 Program is to increase the number of prison beds, reduce cost of incarceration, assist sheriff's offices with manpower, and place inmates closer to families.[3]  The Act 309 Program is codified at Arkansas Code Annotated section 12-30-401.  Further, the stated policy of the Act 309 Program includes in pertinent part:

> It shall be the responsibility of the county and the city to ensure that assigned inmates(s) are not used to provide personal services for private benefits, to act in a law enforcement capacity, nor supervise other inmate(s).  Inmates released under Act 309 . . . will not be used to replace city, county, state, or federal employees.

Ark. Admin. Code 004.00.2-1212 (December 2015).

Private actors may incur section 1983 liability only if they are willing participants in a joint

---

[3] http://adc.arkansas.gov/inmates/Pages/inmatePrograms2.aspx#act, (last visited January 15, 2016).

action with public servants acting under color of state law. *See Miller v. Compton,* 122 F.3d 1094, 1098 (8th Cir.1997). The Plaintiff must establish, at the very least, an agreement or meeting of the minds between the private and state actors, and a corresponding violation of the Plaintiffs' rights under the Constitution or laws of the United States. *See Mershon v. Beasley,* 994 F.2d 449, 451 (8th Cir.1993); *see also Dossett v.. First State Bank,* 399 F.3d 940, 951 (8th Cir.2005) (under § 1983, plaintiff must establish not only that private actor caused deprivation of constitutional rights, but also that private actor willfully participated with state officials and reached mutual understanding concerning unlawful objective of conspiracy).

Not only did Plaintiff fail to allege Defendant McFarland was a state actor, he also failed to allege Defendant McFarland and the OCDC had any type of agreement or meeting of the minds regarding Plaintiff's medical care.  Accordingly, Plaintiff has failed to state a claim against him upon which relief may be granted.  I recommend Plaintiff's claims against Defendant McFarland be dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) & 1915(A).

ii.     Privacy claim regarding McFarland

Plaintiff also claims that Defendant McFarland conducting Plaintiff's book-in to the OCDC violated Plaintiff's privacy rights.

In *Whalen v. Roe,* 429 U.S. 589, 599 (1977), the Court discussed a constitutionally protected "zone of privacy" involving two different kinds of interests. *Id.,* 429 U .S. at 598–599. The first "is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Id.* at 599.

Following *Whalen,* the courts have recognized a constitutionally protected right of individuals to avoid disclosure of personal matters. This right has been variously characterized as

10

the right to confidentiality or the right to privacy. *See e.g., Cooksey v. Boyer,* 289 F.3d 513, 515–516 (8th Cir.2002). However, as pointed out by the Eighth Circuit in *Cooksey* "[n]ot every disclosure of personal information will implicate the constitutional right to privacy." *Id.,* 289 F.3d at 516. The Eighth Circuit noted it had "consistently held that to violate the constitutional right of privacy the information disclosed must be either a shocking degradation or an egregious humiliation . . . to further some specific state interest, or a flagrant bre[a]ch of a pledge of confidentiality which was instrumental in obtaining the personal information." *Id.* (citations and internal quotation marks omitted).

Further, in the context of individuals detained in prisons or jail, it has been held that although "prisoners do not shed all constitutional rights at the prison gate, . . . lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner,* 515 U.S. 472, 485 (1995).

Here, Plaintiff has not alleged that his personal information was disclosed by Defendant McFarland to any third parties or ever used for any purposes other than by the OCDC for the legitimate purpose of incarcerating him.  Nor has Plaintiff alleged the content of the information he shared with Defendant McFarland at booking was of the type that would cause a shocking degradation or egregious humiliation to him if it were in fact disclosed.

Moreover, even if Plaintiff established a constitutional claim regarding Defendant McFarland conducting the book-in process, compensatory damages cannot be awarded for the violation of a constitutional right alone.  There must be an actual injury resulting from the violation to warrant compensatory damages.  *See Memphis Community School Dist. v. Stachura,* 477 U.S.

299, 307 (1986) ("[w]here no injury was present, no compensatory damages could be awarded.") (internal quotations omitted).  Plaintiff did not claim or testify to any injury he suffered as a result of Defendant McFarland obtaining his personal information during the book-in process.

Accordingly, Plaintiff's right to privacy claim regarding Defendant McFarland fails as a matter of law.

B.    Ouachita Defendants

I will now address the Ouachita Defendants Motion for Summary Judgment.

i.    Official capacity claims

Plaintiff has failed to state an official capacity claim against any Defendant.  Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the Defendants acted under color of state law and that they violated a right secured by the Constitution.  *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).

Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities.  *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998).  With respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity."  *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010).  In other words, Plaintiff's official capacity claims against Defendants here are treated as claims against Ouachita County.  *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a

*respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013).   To establish Ouachita County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009)(citation omitted).   The applicable law has been summarized as follows:

> There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008). There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach. *Speer v. City of Wynne*, 276 F.3d 980 (8th Cir. 2002); *Parrish v. Luckie*, 963 F.2d 201, 207 (8th Cir. 1992) ("A public entity or supervisory official may be held liable under § 1983 even though no government individuals were personally liable."). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability. *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389-90 (8th Cir. 2007).

*Id.* at 817-18.

To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). Plaintiff testified at the hearing that he did not know what the policy of the OCDC was but that he assumes it is to help the inmates.  Plaintiff also testified that the OCDC has a policy of asking inmates to pay for care of pre-existing conditions.  These two statements fail to claim any unconstitutional policy of the OCDC.  Plaintiff makes no allegations that the OCDC has a policy that denies inmates medical care whether on pre-existing conditions or not.

13

In *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom. It stated:

> To establish a claim for "custom" liability, [Plaintiff] must demonstrate:
>
> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was the moving force behind the constitutional violation.

*Id.*, 725 F.3d at 828 (citations omitted). Plaintiff has failed to allege any custom Ouachita County that violated his constitutional rights.

Accordingly, Plaintiff's official capacity claims against all Defendants fail as a matter of law.

### ii.   Supervisory liability

Next, Plaintiff's claims against Defendants Norwood and Strickland fail as a matter of law. A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Servs*, 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994); *see also Whitson v. Stone County Jail*, 602 F.3d 920, 928 (8th Cir. 2010) ("In a § 1983 case, an official is only liable for his own misconduct and is not accountable for the misdeeds of his agents under a theory such as *respondeat superior* or supervisor liability") (internal quotations omitted); *Keeper v. King*, 130 F.3d 1309, 1314 (8th

14

Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability").  "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.  To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (*quoting Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)).

Plaintiff testified at the hearing, Defendant Norwood and Defendant Strickland are responsible for denying him medical care because they should have known about his situation.  According to Plaintiff, Defendant Strickland meets with the jail administrator and jailers weekly to discuss grievances.  Therefore, Defendant Strickland should have learned of Plaintiff's requests at these meetings.

This is in sufficient to show Defendants Norwood and Strickland were personally involved or directly responsible for the actions of which Plaintiff complains.  Plaintiff is simply alleging Defendants Norwood and Strickland should have known of his complaints.[4]

Accordingly, all of Plaintiff's claims against Defendants Norwood and Strickland fail as a matter of law.

      iii.    <u>Delay of medical care</u>

Plaintiff claims in his Amended Complaint he was denied medical care.  Specifically, Plaintiff claims: (1) he was denied medical attention for thirty-three (33) days for a burn on his

---

[4] I must also note that Plaintiff stated in his deposition testimony that anytime Defendant Norwood was made aware of Plaintiff's complaints the complaints were addressed. ECF No. 26-1, pp. 71-72.

back, scabies, and high blood pressure; and (2) his pain medication was delayed for fifteen (15) days in April 2013.  ECF No. 21.  Defendants argue Plaintiff's claims are delay of medical care claims rather than denial of medical care claims, and that Plaintiff cannot show any Defendant was deliberately indifferent to Plaintiff's serious medical need.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs.  *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012).  The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard.  *See Butler v. Fletcher,* 465 F.3d 340, 344 (8th Cir. 2006).  To prevail on his Eighth Amendment claim, Plaintiff must prove Defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'"  *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

In order to show  he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does

16

not give rise to the level of a constitutional violation.  Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976).  However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009).  The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record.  *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005).  Unless, however, the need for medical attention is obvious to a layperson in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay.  *See Schaub v. VonWald,* 638 F.3d 905, 919 (8th Cir. 2011) (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

While Plaintiff claims he was "denied" medical care and medication the summary judgment record indicates Plaintiff's medical care and prescriptions were not denied but instead delayed.  It is undisputed that Plaintiff was booked into the OCDC on May 3, 2012 with a burn on his back. He was given cream for the burn but was not taken to the emergency room for treatment until June 5, 2012.  At this visit, Plaintiff received Benadryl and intravenous fluids.  Plaintiff was then taken to the doctor on June 28, 2012.  At this visit, Plaintiff was prescribed medication for his scabies,

the burn, and his high blood pressure along with other medications.  Finally, Plaintiff's pain medications were delayed in April or May 2013 by fifteen (15) days.

While Defendants actions in these delays may rise to the level of negligence, mere negligence will not suffice to state a claim for deprivation of a constitutional right under section 1983.  *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).  Instead, "an inmate who claims that delay in medical treatment rose to the level of a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment."  *Reece v. Groose,* 60 F.3d 487, 491 (8th Cir. 1995).  *See also Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005).  Plaintiff has not presented any verifying medical evidence showing the objective seriousness of the delay in receiving his medical care and medication.  At the hearing, when I specifically asked Plaintiff if he had any verifying medical evidence he would like to present showing this delay in care of his burn caused him injury he responded stating he only assumed the delay caused his nerve damage.  Further, when asked about the delay in receiving his medications Plaintiff testified this delay caused dizziness, exhaustion, and pain. While, Plaintiff claims he suffered nerve damage, dizziness, exhaustion, and pain due to the delays in receiving care of his burn and his prescriptions, he testified at the hearing that no medical professional has ever told him these symptoms were a result of Defendants' delay.  Therefore, Plaintiff's claim regarding the delay of his medical care and medication fail as a matter of law.  *Id.*

5.    **CONCLUSION**

Accordingly, I recommend Defendants' Motion for Summary Judgment (ECF No. 24) be **GRANTED** and Plaintiff's claims against Defendants David Norwood, Lt. Joe Strickland, James

Bolton, Doug Woods, Carmen Brian, Teri West, and Christ Lindsey all be dismissed with prejudice.  Further, I recommend that Plaintiff's claims against Defendant Adrian McFarland be dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) & 1915(A).

**The parties have fourteen (14)  days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **20th day of January 2016.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

19